## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CAROL ANN C.,

Plaintiff,

v.                                                                  6:19-CV-904
                                                                    (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CAROL ANN C., Plaintiff pro se
ANDREEA L. LECHLEITNER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 3,4).

## I.   **PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on May 20, 2016, alleging disability beginning on the same date. (Administrative Transcript ("T") 108-12, 125). Plaintiff's application was denied initially on June 22, 2016. (T. 51-54). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") David S. Pang on January 23, 2018. (T. 25-41). At the hearing, the ALJ heard testimony from plaintiff, as well as vocational expert ("VE") Diana Simms. (*Id.*). On April 30, 2018, the ALJ issued an order denying plaintiff's claims. (T. 10-17). The

ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 12, 2019.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational

2

factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was born on November 14, 1953, making her 64 years old on the date of the administrative hearing. (T. 42). She lived alone, attended to her own personal care, and drove a car. (T. 31-32). For over thirty years, plaintiff worked as a receptionist in the same dental office. (T. 29-31). Her duties included answering the phone, "pulling charts," interacting with patients, and handling paperwork. (T. 30). The heaviest weight she had been required to lift was approximately 20 pounds. (T. 31).

In June 2016, plaintiff retired from her position due to medical complications. (T. 29-30). Specifically, plaintiff suffered from chronic dry eye and light sensitivity. (T. 32). She used eye drops so often that it blurred her vision, causing her to make mistakes on the job. (T. 30-31). She testified that she was "okay" when she did not have to work under fluorescent lighting, which caused her extreme pain. (T. 32). She took both over-the-counter and prescription eye drops to counteract her symptoms. (T.

4

33-34).  Plaintiff also testified that she had acid reflux and temporomandibular joint dysfunction ("TMJ").  (T. 34, 36).

Plaintiff spent her free time caring for her three cats and assisting her elderly mother, who lived nearby. (T. 34).  She performed her own household chores, including shoveling snow.  (T. 34).

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her disability onset date.  (T. 12).  At step two of the sequential evaluation, the ALJ found that plaintiff's chronic dry eye was a severe impairment. (*Id.*).  At step three of the evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (T. 14).

At step four, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, "but with the following nonexertional limitations: [plaintiff] can occasionally work in environments with fluorescent lighting."  (*Id.*). Next, the ALJ found that plaintiff was unable to perform any past relevant work.  (T. 15).  However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (T. 16).  Thus, the ALJ found that plaintiff was not disabled.  (T. 17).

## V.   ISSUES IN CONTENTION

The court interprets the arguments set forth in plaintiff's pro se brief as follows:

1.   The ALJ improperly concluded that plaintiff's acid reflux was not a severe impairment.  (Plaintiff's Brief ("Pl.'s Br.") at 4, 10) (Dkt. No. 12).

2.   The ALJ improperly concluded that plaintiff did not have a listed impairment.  (Pl.'s Br. at 5).

3.   The ALJ's RFC assessment is not supported by substantial evidence.  (Pl.'s Br. at 5-8).

4.   The ALJ did not meet his burden of proof at step five. (Pl.'s Br. at 6, 9).

5.   The Appeals Council erred in denying plaintiff's request for review.  (Pl.'s Br. at 7).

The Commissioner contends that the ultimate RFC determination is supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 9-22) (Dkt. No. 15).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   <u>SEVERE IMPAIRMENT</u>

### A.   Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17–CV–1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (noting that an

impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe.  *Monique Danielle W. v. Comm'r of Soc. Sec.,* No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.,* No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)).  Although an impairment may not be severe by itself, the ALJ must also consider "the

possibility of several such impairments combining to produce a severe impairment . . .

." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985).  However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe.  *Id.*  The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The step two analysis "may do no more than screen out *de minimis* claims."  *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.,* No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).  If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five.  *Dixon,* 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone.  *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)).  This is particularly true because the regulations provide that combined effects of all

8

impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### B.   Application

Plaintiff argues that the ALJ failed to assess her acid reflux as severe at step two of the sequential evaluation process.  Defendant argues that the ALJ properly assessed plaintiff's acid reflux, given the absence of any documented limitations stemming from her diagnosis.  For the following reasons, the court finds plaintiff's arguments without merit.

At step two, the ALJ identified plaintiff's chronic dry eye as a severe impairment. (T. 12).  Although he also considered plaintiff's acid reflux, TMJ disorder, and anxiety disorder, the ALJ determined that these conditions were non-severe.  (*Id.*).  With respect to plaintiff's acid reflux, the ALJ pointed out that plaintiff took medication for her condition "with improvement in her symptoms, and no complications or need for additional treatment."  (*Id.*).  Plaintiff's medical records support the ALJ's conclusion in this regard.  In 2014, plaintiff presented to her primary care provider with complaints of stomach pain.  (T. 203-04).  She was diagnosed with gastroesophageal reflux disease ("GERD").  (T. 205-06).  Plaintiff was prescribed Nexium and reported feeling "much better," with a decrease in symptom frequency.  (T. 204).  The few remaining treatment records in evidence reflect that, during the period of alleged disability, plaintiff's

GERD was adequately managed with medication, and did not require any further treatment in order for plaintiff to go about her daily routine. (T. 250, 253). At the consultative examination performed in 2016, plaintiff reported that her acid reflux and GERD were "better" on medication. (T. 237).

Moreover, plaintiff did not cite to any limitations imposed by acid reflux in her self-reported activities of daily living and aptitudes. Her function report does not indicate that her acid reflux affected her exertional abilities. (T. 140-41). In fact, plaintiff admitted to engaging in a wide range of daily activities, such as cooking, cleaning, laundry, gardening, attending sporting events, shoveling snow, walking for exercise, and assisting her elderly mother. (T. 32-34, 136-39, 237-38). When asked to describe any pain she experienced, plaintiff reported headaches and eye strain which exacerbated her TMJ. (T. 143). This evidence belies plaintiff's argument, raised for the first time on appeal, that she would be precluded from bending and lifting due to acid reflux. (Pl.'s Br. at 12). By failing to provide evidence that this condition caused any functional limitations, plaintiff failed to meet her burden of showing at step two that it was a severe impairment. *See Fetes v. Saul,* No. 18-CV-990, 2020 WL 2315841, at *5 (W.D.N.Y. May 11, 2020) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden at step two of showing that he or she has a medically severe impairment or combination of impairments)).

Even if the ALJ had erred at step two of the sequential analysis, the Second

Circuit has repeatedly found such errors to be harmless where the ALJ continues with the remaining steps of the sequential evaluation. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. Mar. 24, 2010) (errors at step two are harmless so long as the ALJ continues with the sequential analysis); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. May 2, 2013) (where an ALJ proceeds past step two and considers the effects of all of a claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless). Thus, the court finds no basis for overturning the Commissioner's decision based on the ALJ's step two analysis.

## VII.   LISTED IMPAIRMENT/APPEALS COUNCIL REVIEW

### A.   Legal Standard

#### 1.   Listed Impairment

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments. *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) (citing inter alia *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). "Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Ramirez Morales v. Berryhill,* No. 6:17-CV-06836, 2019

11

WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation and internal quotations omitted)).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-513 (NAM), 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (quoting *Sullivan v. Zebley,* 493 U.S. at 530).  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

## 2.   Appeals Council Review

At the final stage of the administrative process of adjudicating claims for benefits under the Social Security Act, the regulations authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b).  "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Tammie S. v. Berryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *5 (N.D.N.Y. Feb. 22, 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). "[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision." *Id.*; *see also* §§ 404.981, 416.1481.

12

"The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), report and recommendation adopted, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016) (citation omitted).  As such, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), report and recommendation adopted, 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017).

## B.    Application

Plaintiff argues that both the ALJ and the Appeals Council failed to adequately consider her impairments at step three of the sequential evaluation.  Specifically, plaintiff contends that her diagnosis of Sjögren's syndrome met listing 14.10, compelling a finding of disability.  Defendant argues that plaintiff did not satisfy her burden to show that she fulfills the criteria of listing 14.10 based on the evidence contained in the administrative record.  The court agrees.

In order to satisfy listing 14.10 (Sjögren's syndrome), a claimant must make a threshold showing of the following (in addition to a diagnosis of the condition itself):

A. Involvement of two or more organs/body systems, with:

13

1. One of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of Sjögren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.10.

Here, the ALJ did not specifically analyze the elements of listing 14.10, or any other listed impairment.  (T. 14).  Instead, the ALJ succinctly stated that he "considered potentially applicable listings and [SSRs], and has found that the claimant's impairments, considered singly and in combination, do not meet or equal their requirements."  (*Id.*).

Despite the brevity of his analysis, the court finds no error by the ALJ in failing to specifically identify listing 14.10 in the step three analysis, as there was no diagnosis of Sjögren's syndrome in the evidence he reviewed.  Plaintiff did not identify a diagnosis of

Sjögren's syndrome in her 2016  application for benefits.  (T.  125).  At her administrative hearing in 2018, plaintiff did not testify that she was diagnosed with Sjögren's syndrome, or with an autoimmune disorder, despite the ALJ's inquiry regarding her medical conditions.  (T.  34). The treatment notes in the ALJ's possession did not identify Sjögren's syndrome as a diagnosis,[1] and plaintiff did not report that she suffered from the condition to either consultative examiner.  (T. 239, 246).  Considering the absence of any Sjögren's syndrome diagnosis, it would be unreasonable for this court to expect the ALJ to have found listing 14.10 "relevant" to plaintiff's case.

The first time the Commissioner was presented with evidence that plaintiff tested positive for Sjögren's syndrome was in June 2018, when plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  (T.  105-106).  In addition to a written statement describing her condition, plaintiff submitted a 2016 lab report identifying that she was tested for Sjögren's syndrome, and a May 18, 2018 correspondence from her daughter-in-law and treating provider, nurse practitioner ("NP") Tina Cuda, identifying Sjögren's syndrome as an "ongoing problem."  (T.  21-24).  The Appeals council received the new evidence, but ultimately denied plaintiff's request for review, concluding that the new evidence did "not show a reasonable probability that it would change the outcome of the decision." (T. 2).

---

[1] The last treatment record of evidence, dated July 6, 2016, indicates that plaintiff's primary care provider ordered a panel of "fasting labs," including "ANA w/Reflex ENA + DNA/DS + SJORGENS." (T. 251).

Plaintiff contends that the Appeals Council improperly denied her request for review based on the new evidence of her Sjögren's syndrome diagnosis. I disagree. "The Appeals Council will review a case if . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "New evidence is any evidence that has not been considered previously during the administrative process[,]" that is not cumulative. *Oshea v. Saul,* No. 3:19-CV-232, 2020 WL 2374935, *4 (D. Conn. Mar. 30, 2020) (citing *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010)). "Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Id*.

The court agrees that the evidence presented to the Appeals Council was "new," to the extent these records were not submitted to the ALJ for consideration. However, even assuming the new evidence's relevancy to the time period at issue, it was not probative because there was no reasonable possibility that it would have altered the ALJ's step three determination. At most, the records submitted to the Appeals Council provided evidence of plaintiff's diagnosis of Sjögren's syndrome. A mere diagnosis, however, does not necessarily support a finding of limitations, nor does it alone satisfy the criteria

16

of listing 14.10.  *See Colbert v. Comm'r of Social Sec.*, 313 F. Supp. 3d 562, 581 (S.D.N.Y. June 19, 2018) (listing cases).

In this case, plaintiff's submission to the Appeals Council lacked any medical opinion or functional analysis that materially differed from the evidence which was already before the ALJ and the vocational expert when they reached their conclusions. *See Suttles v. Colvin,* 654 Fed. App'x 44, 47 (2d Cir. 2016) (Finding "no reasonable possibility that consideration of [new evidence] would have altered the ALJ's decision, because the evidence . . . was not materially different from that which was already before the ALJ and vocational expert when they reached their conclusions.").  In fact, the new evidence failed to address plaintiff's alleged limitations as a result of her Sjögren's syndrome in any meaningful way.  Plaintiff testified at the administrative hearing in 2018, over two years after she tested positive for Sjögren's syndrome.  Thus, the symptoms and limitations which plaintiff testified to at the hearing presumably included those caused by her diagnosis.  There is no medical evidence that, during the period between plaintiff's lab test and the 2018 administrative hearing, plaintiff's condition deteriorated.  More importantly, the new evidence did not provide what the administrative record lacked – proof that, during the alleged period of disability, plaintiff suffered from at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) required to meet listing 14.10.

If, as plaintiff contends, her autoimmune disorder has progressively become worse

and increased her functional limitations since the date of the ALJ's decision, she may want to consider filing a new application for benefits to address these issues, if she has not done so already. *Quinlivan v. Comm'r of Soc. Sec.*, No. 08-CV-1175 (MAD/VEB), 2011 WL 2413491, at *8 (N.D.N.Y. May 23, 2011) (if the plaintiff suffered an aggravation of an impairment after the ALJ's decision, the proper remedy would be to submit a new application). Nevertheless, this court finds that the Commissioner's step three analysis was supported by substantial evidence and is not a basis for remand.

## VIII.   RFC/WEIGHT OF THE EVIDENCE/STEP FIVE ANALYSIS

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL

374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues

are not "medical issues," but are "administrative findings."  The responsibility for

determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL

374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a

listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the

plaintiff is "disabled" under the Act.  *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner,

the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The

ALJ must clearly state the legal rules that he applies and the weight that he accords the

evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2

(S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323,

at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is not

afforded controlling weight where . . . the treating physician issued opinions that are not

consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*, 362

F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating

source's records controlling weight, then he must explicitly consider the four *Burgess*

factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### 3.    Step Five Analysis

At step five of the disability analysis, the burden of proof shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational Guidelines ("Guidelines"). *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Guidelines. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

The requirement for a vocational ("VE") expert is triggered when a nonexertional or additional impairment causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp v. Bowen*, 802 F.2d at 605-06.  The appropriateness of applying the Guidelines and the necessity for expert testimony must be determined on a case-by-base basis.  *Id*. at 605.

### B.    Application

Plaintiff contends that the RFC determination is not supported by substantial evidence, and does not adequately account for her physical limitations.  Specifically, plaintiff disputes that she could perform the exertional requirements of medium or heavy work.  Plaintiff also argues that the ALJ omitted certain functional and environmental limitations that prevent her from performing substantial gainful employment.  Last, plaintiff argues that the ALJ improperly relied on her activities of daily living in determining her physical RFC.

The record reflects that, during the alleged period of disability, plaintiff visited, infrequently, with her primary care provider, N.P. Cuda, as well as opthamologist Theodore J. Wadas, O.D.  Plaintiff testified that she visited Dr. Wadas every two years for follow-up appointments.  (T. 33).  On January 25, 2016, plaintiff presented to Dr. Wadas for a "re-check."  (T. 253).  At that time, plaintiff complained that her eyes felt dry, and reported some improvement with eye drops.  (*Id.*).  Plaintiff denied any routine

headaches, double vision, floaters, blurry or uncomfortable vision. (*Id.*). Based on Dr. Wadas' examination, he found plaintiff to have asymptomatic trichiasis[2] in the left eye, dry eye syndrome in both eyes, and superficial punctate keratitis[3] in both eyes. (*Id.*). He noted that her dry eye was worsening, but the punctate keratitis had improved. (*Id.*). Based on his impressions, Dr. Wadas prescribed plaintiff lubricating gel and various eye drops.[4] (*Id.*).

The record otherwise contains one treatment note from NP Cuda during the alleged period of disability. On July 6, 2016, plaintiff presented to her primary care provider for an eye evaluation and headache complaints. (T. 247). She exhibited 20/20 corrected vision in both eyes. (*Id.*). At the visit, plaintiff complained of chronic dry eye that was worse with wind and air conditioning. (T. 248). Plaintiff also reported light sensitivity that was worse under the fluorescent lighting at her place of employment. (*Id.*). NP Cuda indicated that plaintiff was only following up with Dr. Wadas on an as needed basis, due to improvement of her issues "at max ability for now." (*Id.*). NP Cuda also noted that plaintiff had to leave her job "due to inability to work with eye irritation under the fluorescents." (*Id.*). As a result of her examination, NP Cuda ordered a variety

---

[2]"Trichiasis is a common eyelid problem. Eyelashes grow inwards toward the eye. The lashes rub against the cornea, the conjunctiva, and the inner surface of the eyelids." https://www.aao.org/eye-health/diseases/what-is-trichiasis

[3]Superficial punctate keratitis is an eye disorder caused by death of small groups of cells on the surface of the cornea. *See* https://www.merckmanuals.com/home/eye-disorders/corneal-disorders/superficial-punctate-keratitis

[4]Plaintiff testified that her punctate keratitis healed by March 2016. (T. 33).

23

of lab tests, including one for Sjögren's syndrome.  (T. 251).

Neither NP Cuda nor Dr. Wadas prepared a medical opinion on behalf of plaintiff.[5]  However, the record contains a June 16, 2016 consultative examination report by internist Brian Cole, M.D.  (T. 237-40).  After recording plaintiff's medical and social history, Dr. Cole performed a physical examination of plaintiff.  (T. 238).  He recorded plaintiff's vision as 20/30 with glasses.  (T. *Id.*).  The results of his eye examination were otherwise normal.  (*Id.*).  Furthermore, plaintiff exhibited a normal gait, and a full squat accompanied by knee pain.  (*Id.*).  She exhibited full range of motion in her cervical spine, lumbar spine, shoulders, elbows, forearms, wrists, hips, knees and ankles.  (T. 239).  Plaintiff exhibited full strength in her upper and lower extremities, and full grip strength.  (*Id.*).  Based on his examination, Dr. Cole opined that plaintiff was "restricted from activities requiring fine visual acuity because of chronic dry eye and vision problems."  (T. 240).

The ALJ considered Dr. Cole's opinion and gave it "partial weight."  (T. 15).  The ALJ recognized that plaintiff's visual impairment affected her ability to perform work activities, however he found Dr. Cole's description of "fine visual acuity" to be vague.  (*Id.*).  The ALJ gave this opinion limited weight to the extent that it referred to plaintiff's ability to read normal print, which otherwise appeared intact based on the administrative

---

[5]It appears that when the Commissioner requested plaintiff's medical records, he also sent a form requesting additional information and opinions from the providers themselves.  (T. 186, 235).  Neither Dr. Wadas nor NP Cuda returned a completed opinion to the agency.

record, and as displayed by plaintiff's ongoing ability to fill out forms, drive, and cook. (*Id.*).

The ALJ did not err in concluding that plaintiff could perform a full range of work at all exertional levels.  Plaintiff's treating sources did not assess any limitations that would preclude plaintiff from performing such work, and Dr. Cole did not include any exertional limitations in his medical source statement.  Plaintiff's argument that the ALJ failed to "test" her ability to lift and carry over 50 pounds is misplaced.  The burden lies with plaintiff, not the Commissioner, to establish that she suffers from limitations resulting in a restrictive RFC.  *See Smith v. Berryhill,* 740 Fed. App'x 721, 726 (2d Cir. 2018) ("[Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so.") (citations omitted); *Williams v. Berryhill*, No. 3:17-CV-00383 (CFH), 2018 WL 987257, *5 (N.D.N.Y. 2018) ("[t]he plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity") (citations omitted).  As discussed, there is little in the record to suggest that plaintiff suffered from any exertional limitations due to an impairment.

Furthermore, plaintiff represented to the agency that she fully retained the ability to care for her own home, assist her elderly mother, grocery shop, shovel snow, and garden.  The ALJ properly relied on plaintiff's activities as a factor in his overall evaluation of the medical opinion evidence and in formulating her RFC.  *See Cummings v. Comm. of Soc. Sec*., No. 3:17-CV-0631 (WBC), 2018 WL 2209204, at *8 (N.D.N.Y.

25

May 14, 2018) (citing *Krull v. Colvin*, 669 Fed. App'x 31, 32 (2d Cir. 2016) (ALJ relied, in part, on plaintiff's activities of daily living, such as caring for grandchildren and ability to use a computer, in assessing plaintiff's mental RFC)); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the plaintiff's varied daily activities in formulating the RFC).

The remainder of the ALJ's RFC determination is likewise supported by substantial evidence.  In her brief, plaintiff sets forth several arguments as to why the RFC does not account for all of her limitations.  However, most of the limitations she cites are not supported by the medical evidence of record, or her own representations to the agency throughout the application process.  As previously discussed, there is no medical evidence that plaintiff's acid reflux would prevent her from bending and lifting. In fact, this argument is contradicted by plaintiff's reported activities of daily living.  Nor is there any evidence that plaintiff's TMJ caused any functional limitations that prevented her from working.  The ALJ specifically recognized plaintiff's TMJ symptoms, but concluded they were adequately treated with a daily baby aspirin, as there was no further treatment discussed by plaintiff's treatment providers.  (T. 12).  Plaintiff also testified that she was "allergic to the sun."  (T. 33).  Again, plaintiff's contention that she could not work outside is belied by her own representations that she enjoyed gardening, walked for exercise, and shoveled her own snow.  The medical evidence does not reference any functional limitations imposed by plaintiff's alleged allergy.  Because

these alleged limitations were not supported by the record, it was reasonable for the ALJ to omit them from plaintiff's RFC.  *See Dawn T. v. Saul*, No. 8:19-CV-619 (MAD), 2020 WL 1915259, at *7 (N.D.N.Y. Apr. 20, 2020) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d. Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say").

Moreover, the court finds plaintiff's argument that the ALJ did not adequately address her symptoms of both light sensitivity and chronic dry eye to be without merit. After finding plaintiff's chronic dry eye to be a severe impairment, the ALJ discussed the symptoms flowing from her diagnosis, including light sensitivity as a result of the corneal abrasions caused by chronic dry eye.  At her administrative hearing, plaintiff emphasized that it was the overwhelming fluorescent lighting at her prior place of employment which precluded her ability to work.  (T. 32).[6]  Plaintiff did not testify about additional limitations imposed by her chronic dry eye, despite being afforded the opportunity to do so.  (T. 36).  This testimony mirrored plaintiff's representation in her functional report that her dry eye resulted in an extreme sensitivity to fluorescent light, and that she was "reasonably okay" when she avoided such lighting.  (T. 141, 143).  At her consultative examination, plaintiff reiterated that her chronic dry eye caused "extreme" light sensitivity, especially with fluorescent lights.  (T. 239).  Other than

---

[6]"I have chronic dry eye.  So, as long as I stay away from the fluorescent lighting and, I can't, like I can't crochet or do a lot of things that I used to do before because my eyes are so sensitive to the light.  As long as I stay away from it, I'm okay, but to work under it, like, say, right here, these lights are killing me in this room."

plaintiff's subjective complaints, there is no evidence in the treatment records that chronic dry eye precluded plaintiff from working under other environmental factors, such as wind, forced air, and dust, as plaintiff presently argues.

The ALJ properly considered the medical evidence of record in concluding that plaintiff was limited to occasionally work in environments with fluorescent lighting.  (T. 14).  In formulating a claimant's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Here, the ALJ relied primarily on Dr. Cole's medical opinion in crafting his RFC determination.  However, the ALJ afforded less weight to Dr. Cole's vague opinion regarding restrictions from activities requiring fine visual acuity. Specifically, the ALJ rejected this opinion to the extent that it referred to plaintiff's ability to read normal print.  The ALJ's evaluation of Dr. Cole's opinion was not improper, as "[t]here is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner." *Kikta v. Comm'r of Soc. Sec.*, No. 15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (citing *Pellam v. Astrue*, 508 F.App'x 87, 89 (2d Cir. 2013)).

Moreover, the court's review of the record otherwise supports the ALJ's evaluation of Dr. Cole's opinion. As the ALJ pointed out, plaintiff retained the ability to

manage her daily activities, including a variety of indoor and outdoor activities.  Both

NP Cuda and Dr. Wadas found that plaintiff had 20/20 corrected vision bilaterally (T.

247, 254), and there is otherwise no evidence in the record showing that plaintiff was

limited from reading normal print.  To the extent Dr. Cole's opinion regarding "fine

visual acuity" referred to the affect of lighting conditions on her vision, the ALJ

considered this opinion and incorporated it into his ultimate findings.  Thus, the court

finds no basis to disturb the ALJ's decision on this issue.  See *Natrella v. Comm'r of*

*Soc. Sec.*, No. 1:19-CV-01237, 2020 WL 1041067, at *7 (S.D.N.Y. Mar. 3, 2020) (citing

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019) (Commissioner's findings of

fact must be upheld unless reasonable factfinder "would have to conclude otherwise")).

Last, the ALJ's step five analysis is supported by substantial evidence, and any

purported error regarding plaintiff's ability to work outside was harmless.  At the

administrative hearing, the ALJ posed a hypothetical to the VE which reflected his

ultimate assessment of plaintiff's RFC.  The VE first explained that the Dictionary of

Occupational Titles ("DOT") does not specifically address lighting, thus his testimony

would be based on his knowledge and experience in the field.  (T. 37-38).  Then, based

on the hypothetical, the VE concluded that plaintiff could perform the job of a day

worker, of which there would be approximately 150,000 jobs available in the economy.

(T. 37).  The VE considered the fact that this position was performed inside an

individual's home, where fluorescent lighting would not be present. (T. 38).  The VE

also testified to other jobs that an individual with plaintiff's RFC could perform, including yard worker and groundskeeper.  (T. 37-38).

On appeal, plaintiff argues that her impairments precluded her from performing any of the jobs identified by the VE.  With respect to the position of day worker, plaintiff argues that (1) the required bending and lifting would exacerbate her acid reflux, and (2) the job would expose her to dirt, dust, and forced air, necessitating the overuse of her eye drops.  (Pl.'s Br. at 12).  For the reasons previously discussed, these arguments are not supported by the medical evidence of record.  Therefore, even if plaintiff was precluded from working in the remaining two positions referenced by the VE because of her sun allergy, the Commissioner nevertheless met his burden at step five by virtue of the number of jobs available for the position of day worker.  *See  Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-0868 (GTS), 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) ("This Court has noted that a 'significant number' of jobs has in practice been held to be a fairly minimal number, and has acknowledged that other courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding."); *Sample v. Comm'r of Soc. Sec.*, No. 17-CV-635, 2019 WL 2464490, at *6 (W.D.N.Y. June 13, 2019) (Any error about whether plaintiff could work as a hand packager was harmless, because the ALJ also found that she could perform another job which existed in significant numbers in the national economy).

**WHEREFORE,** based on the findings above, it is hereby

ORDERED, that the decision of the Commissioner is **AFFIRMED** and this case

**DISMISSED**, and it is

ORDERED, that the Clerk enter judgment for **DEFENDANT**.


Dated: July 24, 2020

Andrew T. Baxter
U.S. Magistrate Judge

31